1836.
Champlin<br>v.<br>Laytin.

---

### CHAMPLIN and others *vs.* LAYTIN and others.
### LAYTIN *vs.* CHAMPLIN and others.

The rules that a purchaser is, in equity, chargeable with constructive notice of facts and circumstances which came to the knowledge of his attorney or agent for the purchase, or in the examination of the title, and that notice of a deed is a constructive notice of the contents thereof, do not apply to controversies between the vendor and purchaser in relation to their own rights. These rules as to constructive notice, are only adopted by the court of chancery for the protection of the prior equitable rights of third persons, against subsequent purchasers who claim in hostility to such rights.

Where a vendor, under a misapprehension of his legal rights, sold a lot of land which by the terms of the conveyances of adjoining lots to prior purchasers had been constructively dedicated for the purposes of a public street, and represented that the lot would not be taken for a street without paying to the vendee the full value thereof, but without communicating the facts upon which the legal question as to the rights of the prior purchasers depended; *Held* that the vendee was entitled to relief against a bond and mortgage given by him for the purchase money; the lot being in fact worth nothing at the time of his purchase.

Whether a party to a contract can in any case be relieved from the same on account of a mistake in matter of law merely? *Quære.*

THESE cases came before the chancellor upon an appeal from a decree of the vice chancellor of the first circuit. The facts in the case sufficiently appear from the following opinion which was delivered by the vice chancellor at the time of making the decree appealed from.

October 4.

1836.

Champlin
v.
Laytin.

W. T. M'Coun, V. C. The bill in the first cause is for a foreclosure and sale under a mortgage and for a decree over against Laytin the mortgagor, for any deficiency. The second suit is upon a cross bill by the mortgagor to have the mortgage delivered up and cancelled, and for a return of the money paid by him on account of the purchase of the mortgaged premises, at the time he gave the mortgage for the balance. To the cross bill the defendants therein interposed a plea in the first instance, which was overruled. They then answered, and both causes have been heard together upon pleadings and proofs.

The following facts present the questions to be considered. On the 24th of January, 1828, the complainants in the first suit and defendants in the second, as executors and trustees of the estate of Elizabeth De Peyster, deceased, offered for sale at auction under a power contained in her will, six lots of ground belonging to her estate, three of the lots represented on a map exhibited at the time of the sale as fronting to Broadway between Fourth and Sixth-streets, and the other three adjoining the rear and fronting to Mercer-street. William Laytin became the purchaser of two of the lots, one fronting to Broadway, at the price of $3000, and the other immediately in the rear for the sum of $1300, and paid one half of the purchase money down, and to secure the residue, gave his two bonds and the mortgages in question upon the two lots respectively.

The deeds executed by the executors to Laytin, the purchaser, for the respective lots, state, by way of recital, that Mrs. De Peyster, in her life time and at the time of her death, was seized in fee of the lots, and they purport to grant and convey the same in fee, and all the estate, right, title and interest, which Mrs. De Peyster had at the time of her death, and which the executors as grantors then had by virtue of the will or otherwise. Each deed contains a covenant that they, the executors, "had not done, committed, or suffered any act, matter or thing whatsoever, whereby to charge or incumber the premises thereby granted, or any part thereof, in title, estate or otherwise however." The two lots thus sold and conveyed are situated within

1836.

Champlin
v.
Laytin.

the present bounds of Fifth street, from Broadway to Mercer street. This street was not laid down on the general map of the city, made and published by the commissioners under the act of the legislature of 1807, nor was such street delineated on the map exhibited at the auction when the lots in question were sold. It appears, however, that in 1817, the corporation caused a map to be made, which was kept in the street commissioner's office, on which Fifth street was laid down as a contemplated street; and that in 1821, the executors and trustees of Mrs. De Peyster's estate, with a view to a sale of some portion of that estate, procured a map to be made of the same, laying it out into lots and numbering them, and on which map Fifth street was also delineated as an intended street, in the same manner as on the map of 1817, in the street commissioner's office. By the map thus procured to be made and with express reference to it, they sold lots in January, 1822, and among others three lots to Mr. Whittemore, one of which extending through from Broadway to Mercer street, was described in their deed of conveyance to him as bounded northeasterly by Fifth street. In the summer of 1829, the corporation of the city of New-York caused a proceeding to be instituted for the purpose of opening that part of Fifth street which comprised the lots in question. The executors and trustees remonstrated against opening the street. Commissioners of estimate and assessment were nevertheless appointed. The circumstance of the map with the street laid out upon it, and the fact that the executors had sold lots by such map, and in the coveyance to Whittemore had bounded him by Fifth street, was urged before the commissioners by the persons interested in the opening as evidence of a perpetual right of way over the land required for the street; and although opposed by the executors and by Laytin, yet the commissioners considered that such a right of way had been granted or created by such previous acts, and that Laytin's title was subject to the easement of a way, which rendered the lots of nominal value only, and the commissioners accordingly awarded to Laytin five dollars for the loss or damage which he would sustain in consequence of relin-

quishing his tittle and interest in the two lots. Their report was subsequently confirmed by the judges of the supreme court after a hearing before them upon objections duly taken.

The confirmation, as well as the report of the commissioners, proceeded upon the ground that the executors, by their previous sale and conveyance to Whittemore, had impliedly granted a right of way over the land within the bounds of the contemplated street, previously to the sale to Laytin, and although the fee of that portion of the land was vested in him by his purchase, yet it was of nominal value only ; and by that decision, which stands unrevoked, the whole title and ownership in Laytin, as grantee of the complainants in the first suit, and as their mortgagor for half of the purchase money, became extinguished. All this was known to them when they filed their bill, and the propriety of resorting to this court for a decree of foreclosure and sale under such circumstances may be questioned, since nothing remains to be sold towards satisfying the mortgage, and an action at law upon the bonds would have been attended by as beneficial a result in every respect as a decree over against the mortgagor. It is a matter, however, of equitable jurisdiction, and the court is bound to take cognizance of the case, and is authorized to make a decree in *personam*, unless the defence set up, or the equities presented by the cross-bill, require me to form a different conclusion. The grounds of defence to the original bill and of relief upon the cross bill, are virtually the same, and depend upon the consideration whether there is any thing amounting to fraud in the conduct of the executors in selling or conveying the lots in question, or whether there is such a mistake or surprize as entitle the purchaser to have the contract rescinded, or a breach of the covenant against the grantors' own acts as contained in the deeds, which this court can lay hold of as a means of relief. On the former occasion, when considering the plea of an eviction, interposed to the cross-bill, I was led to remark that there appeared to be no sufficient reasons for imputing actual or intentional fraud to the executors, and after examining the case more at large up-

on the testimony now before me, I am still of the same opinion.

Representations were made and expectations held out to induce buyers to complete their purchases; which have proved delusive ; but I have no doubt they were made in good faith, and from what Mr. Herring, the acting executor making the sales, deemed at the time to be well founded. Nor does he appear to have wilfully suppressed or concealed any fact which was material to be known in relation to the condition or value of the property as the law, from the decision of the Mercer street case, 4 *Cowen,* 542, was then understood, which was at that time the only decision bearing upon the subject. The decisions which varied and at length overruled it, are all subsequent to January, 1828. Fraud is, therefore, in my opinion, entirely out of the question, as respects the manner of selling the property or the consummation of the sales by executing conveyances and taking the mortgages. The question of mistake, however, is one deserving of more consideration.

It is first necessary to ascertain how far a mistake has happened ; whether it is mutual, or confined to one party ; and then to ascertain its character, whether it be a mistake of fact or of law ; and its effect upon the contract.

When the executors proceeded to sell and convey the lots in question, there was no mistake on their part about the facts which were afterwards taken advantage of to diminish the value of the property, for they had made the map with reference to Fifth street, and sold lots by such map in 1822, and the conveyance to Whittemore, describing the land extending from Broadway to Mercer street, as bounded on one side by Fifth street, was their own act. And with a knowledge of what they had thus done, they sold to Laytin, not the naked fee of the land subject to the use of others, but the whole beneficial ownership, in as ample a manner as it was owned by Mrs. De Peyster at the time of her death, for all the purposes of occupancy and improvement as building lots, and for prices corresponding with that object. In these views of the sale, however, they

were mistaken; but it was a mistake of law, as the law was afterwards expounded, and not a mistake of fact. They had fallen into an error with respect to the legal construction and effect of the previous acts, especially the Whittemore deed under which it was determined that they had impliedly granted a right of way over the land sold to Laytin; and the consequence of which (though unforeseen) was to deprive him of the almost entire beneficial ownership in the land. Such was the nature of the error or mistake on their part in selling the property lying within the bounds of the street.

Now as to the purchaser. It appears from the testimony that, although at the time of the sale he may have been ignorant that any map had been made upon which Fifth street was delineated, or that a street over the land he was buying had ever been or then was contemplated, yet before the purchase was completed he was fully apprized of those facts. His solicitor, while examining the title and ascertaining the true position of the lots, was shewn the map on which Fifth street was laid down at the same time he was verbally assured by Mr. Herring that the street never would be opened; or if opened, the owner would be paid the full value of the lots. Under these circumstances and with a knowledge that the lots were situated within the space designated for a street if ever the same should be required, he determined to complete the purchase. He also had notice of the Whittemore deed. In his searches it was found on record, and reference was had to it at least for the purpose of ascertaining that it did not include the lots proposed to be conveyed to Laytin. Whether the solicitor examined the record so far as to be actually informed of the fact that Whittemore's lot was, in its description, bounded by Fifth street, does not distinctly appear; but I think enough is shewn to warrant that conclusion, and that he is fairly chargeable with notice of the whole contents of that deed. He is, then, to be regarded as accepting a conveyance, paying a portion of the purchase money and giving his bonds and mortgages for the balance, with as full knowledge of the facts as the executors possessed. The mistake on his part

is precisely of the same character as that of the ven-
dors.    The parties, therefore, may be placed upon the
same footing with respect to the mistake into which they
have mutually fallen—a mistake as to the law resulting
from the previous acts of the executors, which, at the time
of affecting the sale had a most important though unforeseen
bearing upon the property in question.    Does this, then, af-
ford any ground for equitable relief to the purchaser from
his contract ?

As a general rule, this court does not relieve upon the
ground of a mistake in matters of law, because every man
is presumed to have a knowledge of the law, and the max-
im that " *ignorantia juris non excusat*," is observed in equi-
ty as well as in courts of law.    Yet there are cases in
which this court will interfere upon the ground of such
mistake, to relieve a party from the effect of his contract ;
as for instance, if one is ignorant of a matter of law involv-
ed in the transaction, and the other, knowing him to be so,
takes advantage of that circumstance to make the contract,
there the court will relieve, though perhaps more properly
on account of fraud in the one party than of ignorance of
law in the other.    So if both parties should be ignorant of
a matter of law, and should enter into a contract for a par-
ticular object, and the result according to law should be
different from what they mutually intended, there, on ac-
count of the surprise or immediate result of the mistake of
both, there can be no good reason why the court should
not interfere to prevent the enforcement of the contract and
to relieve from the unexpected consequences of it.    To re-
fuse, would be to permit one party to take an unconscien-
tious and inequitable advantage of the other, and to derive
a benefit from a contract which neither of them ever in-
tended it should produce.

In *Hunt* v. *Rosemaniere*, (1 *Peters' U. S. Rep.* 1,) the su-
preme court of the United States, in refusing to reform an
instrument on the ground of mistake from ignorance of law,
were particular to say that they did not mean to lay it
down as a rule that in no case will a court of equity relieve
against a plain mistake arising from ignorance of law.    And

on the first occasion, when that case was before them, (8 *Wheaton* 174,) they still more emphatically expressed an unwillingness to go the length of saying that where the effect of an instrument is acknowledged to have been entirely misunderstood by both parties, a court of equity is incapable of affording relief. If this case is not an authority establishing the doctrine, it is very far from being a decision against it, and I must therefore examine other cases to see how far the court of chancery has gone in extending relief upon this ground. Perhaps there may be some difficulty in reconciling all the cases to be found in the books, which have a bearing upon this point. Three cases are noticed by Judge Washington, and there are several which he appears not to have adverted to. The first I shall notice is *Bingham* v. *Bingham*, (1 *Vesey, sen.* 127,) where a bill was filed to have the purchase money refunded, which the plaintiff had paid upon the sale and conveyance to him of an estate which afterwards appeared to have been the plaintiff's own property. From the report of the case and the statement of the facts in *Belt's Supplement*, (*p.* 79,) the ground of the bill was, that the plaintiff had made the purchase through ignorance of the law as to his own title; and the answer set up the defence that it was his own fault—he should have been better advised before he parted with his money—for that all purchases were to be at the peril of the purchaser unless he will secure himself by covenants. Yet it was decreed for the plaintiff; for though no fraud appeared, and the defendant apprehended he had a right to sell, there was a plain mistake, such as the court was warranted to relieve against. This case appears to have an important bearing upon the present. In *Stapylton* v. *Scott*, (13 *Vez. Rep.* 425,) the lord chancellor in adverting to the effect of a mistake of both parties upon their contract, observes, that it avoids the contract at law as well as here. And in reference to the circumstances before him, he remarks: "If the executors believed they had authority to sell and intended to sell, and the plaintiff to buy the premises, he should hold it no contract at law, and much less in this court. Where the purchaser's inducement to the contract depends upon a mis-

take of his own, to which he was not led by the vendor, whether that avoids the contract is a very different consideration." The mistake which called for these observations was, probably, one of fact, and they may, therefore, be deemed not strictly applicable. But the next case appears to be a direct authority upon the point that where an agreement is entered into and consummated, the effect of which, as a matter of legal obligation was not understood by the parties, there, upon the ground of mistake and surprize upon both, though there is no fraud, the contract will be rescinded. I refer to *Willan* v. *Willan*, (16 *Vesey*, 72.) There an agreement had been made for a lease, and a lease was executed in pursuance of it with covenants of renewal upon certain specified terms, and the bill was filed to have it set aside or delivered up. Lord Eldon, upon the ground that it was impossible the parties could have understood the effect of the covenants of renewal, and the circumstances showing that they did not understand it, and that it was a matter of surprize upon both parties, decreed that the agreement should be rescinded, and the lease given up and cancelled.

I think these cases are sufficient to establish the correctness of the position, that a contract entered into under a mutual misconception of legal rights, amounting to a mistake of law in both contracting parties by which the object and end of their contract according to its intent and meaning cannot be accomplished, is as liable to be set aside or rescinded, as a contract founded in mistake of matters of fact; and that the court has the same power to grant relief in the first case as in the last. The case I am considering is clearly one of that description. The facts were understood, but the law was not; both parties were alike mistaken; the vendors supposed they could give a title, which would confer a beneficial ownership in the land ; this it was their object to do, and the purchaser calculated upon receiving a title which would vest him with an estate and interest for all useful purposes, commensurate with the prices which he agreed to pay. In this they were both disappointed, the law did not admit of it. The vendors had previously de-

prived themselves of the power to confer such an owner-ship. The adjudication upon that point pronounced in relation to these parties and upon the effect of the deed which they gave is conclusive. The contract, therefore, fails of its object, and it is but right and just that it should be rescinded. In *Hitchcock* v. *Giddings,* (4 *Price,* 135,) the court of exchequer decided, that where a vendor through ignorance and mistake, agreed to sell that in which he had no interest at the time of sale, the contract should be rescinded, and a bond given for the purchase money should be cancelled and the interest which had been paid upon it should be refunded. And I am at a loss to perceive how I can do less in the present case. If this conclusion is the correct one, and the parties are to be put in the same condition they would have been in if the contract had never been made, it then becomes unnecessary to examine the effect of the covenant in the deed, and whether the purchaser can have any benefit from it in this court. These questions have given rise to much discussion, and to the examination of several cases in our own courts and elsewhere, to shew that there can be no relief here under the covenants, without an eviction by title paramount, which has not happened ; and for the same reason that a failure of consideration for the want of title affords no ground for equitable relief. Whether, in these respects, it can be distinguished from *Bumpus* v. *Platner,* (1 *John. Ch. Rep.* 213,) *Abbott* v. *Allen,* (2 *John. Ch. Rep.* 519,) *Chesterman* v. *Gardiner* (5 *John. Ch. Rep.* 29,) *and Governeur* v. *Elmendorf,* (5 *John. Ch. Rep.* 79,) I shall not now inquire.

On the other ground I think the purchaser is abundantly entitled to the aid of this court. *Lyon* v. *Richmond,* (1 *John. Ch. Rep.* 51,) has been much relied upon to shew he is not entitled to relief even upon that ground. Without impugning the general doctrine as there stated, which is undoubtedly correct, it is sufficient to observe that the peculiar circumstances, as already shewn, distinguishes the present case and takes it out of the general rule. Several other facts might be here mentioned to strengthen the equity of this case on the part of Laytin, the purchaser, and to lessen that of the

executors; for instance, the inducements held out to him to complete his purchase by the verbal assurance of Mr. Herring that Fifth street never would be opened, or if opened that the lots would be paid for to their full value. Laytin had a right to repose upon this assurance, and if the equities were otherwise equal this circumstance might help to turn the scale. But there is another. It is proved that in consequence of designating the street in 1822, they then sold the lots to Whittemore and others to a better advantage than they otherwise would have done. Having benefitted the estate by that operation, they have not now the same right to complain of the hardship which that measure alone has brought upon them.

Upon the whole, I am satisfied that the loss must be borne by the estate. I shall, therefore, dismiss the bill in the first suit with costs; considering it to have been unnecessarily filed. And in the suit upon the cross-bill, I shall decree the bonds and mortgages to be given up and cancelled, and the portion of the purchase money which was paid to be refunded, with interest; the purchaser to allow for the small amount awarded to him by the commissioners. And under the circumstances, neither party is to have costs against the other in this last suit.

From this decision of the vice chancellor the complainants in the original suit who were the defendants in the cross suit appealed.

*H. W. Warner*, for appellants. Contracts are not to be rescinded but in the clearest cases and on the strongest evidence, especially when they have been executed. In regard to real estate particularly, purchasers must, in general, look to their covenants, and cannot be relieved on the ground of failure or defect of title. (*Chesterman* v. *Gardner*, 5 *John. Ch. Rep.* 29. *Governeur* v. *Elmendorf*, *Id.* 79.) Want of notice, though in proper cases a good defence, cannot be set up as a ground of relief, and the respondent's bill should, therefore, have been dismissed. At all events the relief ought in no view to extend beyond the mortgages. (*Frost* v. *Beekman*, 18 *John. Rep.* 544.) The respondent

purchased deliberately and with full knowledge of facts, and having taken his deed, entered into possession and exercised acts of ownership for nearly two years, he is too late with his objections. (*Sugden on Vend.* 9. *Fluyder* v. *Cocker*, 12 *Ves.* 27. *Burwell* v. *Brown*, 1 *Jac. & Walk.* 169. *Ward* v. *Jeffrey*, 4 *Price*, 294. *Royster* v. *Shackleford*, 5 *Little Rep.* 229.) Notice of a deed is notice of its contents. The cross bill is not framed for relief on the ground of a mistake of law ; and there is no proper evidence of such mistake. A mere mistake of law is not a ground for relief. (*Hart* v. *Rousmainier*, 2 *Mason*, 244, *and* 1 *Pet. Rep.* 1, *and cases there referred to*. *Wheaton* v. *Wheaton*, 9 *Conn. R.* 96. *Lyon* v. *Richmond*, 2 *John. Ch. Rep.* 51.) The respondent was under no mistake when he purchased, in reference to the law as then understood and in force. An executed contract, good at the time it is made, can never be rescinded in equity on account of a subsequent alteration of the rules of law relative to its subject.

*F. B. Cutting*, for the respondent. Supposing every fact relating to the property had been as fully known to the respondent as to the appellants, the respondent is entitled to the relief decreed below, on the ground of a mutual mistake of the law. (*Hitchcock* v. *Giddings*, 4 *Price*, 135. *Willan* v. *Willan*, 16 *Vesey*, 73. *Bingham* v. *Bingham*, 1 *Vesey*, *sen.* 126. *Belt's Supp.* 79. *Lansdown* v. *Landsdown*, *Mosely*, 364. *Purey* v. *Desbourne*, 3 *P. Wms.* 320. *Evans* v. *Llewelyn*, 2 *Br. C. R.* 150. *Edwards* v. *McLeary*, *Cooper*, 307. *Leonard* v. *Leonard*, 2 *Ball & Beatty*, 184, n. (a.) 2 *Evans' Pothier*, 369, *ed.* 1806. *Hunt* v. *Rousmanier*, 8 *Wheaton*, 205, *S. C.* 1 *Peters' U. S. Rep.* 13. *Mead* v. *Johnson*, 3 *Cow. Rep.* 592. *Lowndes* v. *Chisolm*, 2 *McCord's Ch. Rep.* 455. *Lawrence* v. *Beaubien*, 2 *Bailey's S. C. Rep.* 623. *Hopkins' Exec.* v. *Mazyck*, 1 *Hill. Ch. Cas.* 250. *Fitzgerald* v. *Peek*, 4 *Little's Rep.* 127. *Glassell* v. *Thomas*, 3 *Leigh's Rep.* 113. *Rowlin* v. *Pollock*, 7 *Monroe's Rep.* 33. *Drew* v. *Clark*, *Cooke's Rep.* 374.) The respondent was actually ignorant of those facts, viz. the acts of the executors, by which they had rendered them-

selves unable to give him a beneficial interest in the proper-ty. And the respondent is not chargeable with construc-tive notice of such facts. The statements of Mr. Herring, one of the executors, amounted to a misrepresentation in point of fact.

The respondent is entitled to the relief given below, in any aspect of the case; whether it is concluded that he was merely ignorant of the facts which had occurred and mis-took his contract ; that such facts had been wilfully, or through error, concealed by the executors ; or, that there had been a misrepresentation in point of fact on the part of the executors, either fraudulent or otherwise. (*Robinson* v. *Dickenson*, 3 *Russell*, 399. *Story on Equity*, 155, 156 *et seq. Gillespie* v. *Moon*, 2 *John. Ch. Rep.* 585. `Wilkins v. Woodfin*, 5 *Munf.* 183. *Armstrong* v. *Hickman*, 6 *Munf.* 287. *Chamberlain* v. *Marsh, id.* 283. *Burrall* v. *Jewett*, 2 *Paige*, 146. *Woods* v. *Hall, Dev. Eq. Rep.* 411. *Wa-ters* v. *Mattingley*, 1 *Bibb*, 244. *Robinson* v. *Gilbeth*, 4 *id.* 183. *Thomas* v. *Todd*, 3 *Litt. Rep.* 337. *Carr* v. *Callaghan, id.* 366.) Laytin has no remedy at law, or, at all events, the remedy is doubtful and inadequate. The incumbrance and the amount thereof having been judicially ascertained, this court can grant relief for the breach of the covenants in the deed. This court has jurisdiction, and the appellants have submitted to it. (*Jones* v. *Gardner*, 10 *John. Rep.* 269. *Kellogg* v. *Ingersoll*, 2 *Mass. Rep.* 97. *Pres-cott* v. *Trueman*, 4 *Mass. Rep.* 627. *Kane* v. *Sanger*, 14 *John. Rep.* 89. *Hitchcock* v. *Harrington*, 6 *John. Rep.* 290.) The appellant is too late in objecting to the jurisdiction of the court. (*Grandin* v. *Le Roy*, 2 *Paige*, 509. *Hawley* v. *Cramer*, 4 *Cowen*, 727. *Abbot* v. *Allen*, 2 *John. Ch. Rep.* 521. *Johnson* v. *Gere*, 2 *John. Ch. Rep.* 547. *Edwards* v. *McLeary, Cooper*, 307. *Mead* v. *Johnson*, 3 *Conn. Rep.* 592. *Prescott* v. *Trueman*, 4 *Mass. Rep.* 630. *Kelloggs* v. *Ingersoll*, 2 *Mass. Rep.* 97. *Frisbee* v. *Hoffnagle*, 11 *John. Rep.* 50.)

THE CHANCELLOR. I concur with the vice chancellor in the result at which he has arrived in this case; but I cannot agree with him in the conclusion that the correctness or incorrectness of the decision turns upon the question whether this court can relieve parties against a mistake in law merely, where both acted with a full knowledge of all the facts upon which the question of law arises. Neither do I wish to be considered as expressing any opinion one way or the other upon that point, which will be found to present great difficulties on both sides. If any relief can be had in such a case, it must be upon the ground of a distinction between an actual *mistake*, proved to have occurred, as in the case of *Lawrence* v. *Beaubien* (2 *Bailey's S. C. Rep.* 623,) and a mere *ignorance* of the law which was applicable to the facts of the case, as known to both parties. And it must also be where, as in that case, the party seeking such relief acquired no beneficial interest by the contract, and where the adverse party has parted with nothing which was of any real value; or where the latter has intentionally deceived the other as to the opinion of counsel or the decision of a judicial tribunal upon the question of law.

The vice chancellor supposes the purchaser and his counsel were chargeable with constructive notice of all the facts out of which the question of law arose; and that the declaration of Herring that the street would never be opened, and that the lot could not be taken for a street without paying the full value of the land, was a mere mistake in point of law which the purchaser was presumed to know was otherwise. But if Laytin was not acquainted with all the facts in the case, that representation was calculated to mislead him in point of fact, even if he had known what the law was in reference to the state of facts as they now appear. In other words, it was tantamount to a declaration on the part of the vendor that neither they nor those under whom they claimed the lot in question had dedicated the lot to the public, or done any other act by which the corporation, or the owners of the adjacent land, would have the right to open a street over the lot without paying the owner the full

value thereof. Herring was undoubtedly acting under a misapprehension as to the law of the case, as he was fully acquainted with all the facts. But to a person who knew the law and was ignorant of the particular facts out of which the right to take the lot for the purposes of a street without compensation arose, this declaration of Herring amounted to a misrepresentation in point of fact. For certain purposes, and where the equitable rights of third persons are concerned, it has been found necessary by this court to hold a purchaser to be chargeable with constructive notice of all the facts communicated to his attorney or agent for the purchase, or in the examination of the title ; and that notice of the existence of a deed was good constructive notice of the contents of the deed itself, especially if it was one of the deeds under which the purchaser derived his title to the premises. But this equitable rule as to constructive notices has no reference to controversies between the vendor and vendee in relation to their own rights. The vice chancellor was incorrect in applying that principle to the case now under consideration. For the evidence in the case shows that even the counsel who examined the title had no actual notice of the contents of the several deeds, under which the owners of some of the adjacent lots had acquired a right to have a street opened across the lot in question without paying for the land itself over which such street was subsequently laid out and opened.

The facts, therefore, present a case in which the vendors, under a misapprehension of their legal rights, have sold and received part payment for a lot which was already dedicated to the public, and which for that reason was worth nothing to the owners, or those whose interest they represented in this transaction ; and where the purchaser, relying upon the information of the adverse party, has purchased and in part paid for a lot which was in fact of no value either to him or to the vendors. It was therefore just and equitable, after the purchaser had been evicted by the opening of the street across the lot, to decree a discharge of the bond and mortgage and a return of the purchase money which had been paid towards the lot under such a misapprehension of the facts.

There is no error in the decree appealed from, to the prejudice of the appellant ; and that decree must be affirmed, with costs to be paid by the appellants out of the property of the decedent in their hands as executors and trustees. (*a*)

(*a*) The decree in these causes was affirmed, upon appeal to the court for the correction of errors, in December, 1837.