[See Case No. 6,887.]

---

## Case No. 6,889.

### HUNT v. ENNIS et al.

[2 Mason, 244.] [1]

Circuit Court, D. Rhode Island. June Term, 1821.

POWER COUPLED WITH AN INTEREST — WHETHER REVOCABLE — NAKED POWER — RELIEF IN EQUITY FOR MISTAKE.

1. A power coupled with an interest does not expire with the death of the person creating it.
[Cited in Davis v. Lane, 10 N. H. 158.]

2. A naked power does not necessarily expire with the death of the person creating it. It may necessarily be such as can be exercised only after the death of such party. As a power to an executor to sell lands to pay debts.

3. A naked power, which expires with the death of the party creating it, is such as requires the power to be executed in the name and as the act of the grantor, and not of the grantee. As a power of attorney to execute an instrument, or do other acts in the name of the grantor.

4. A power of attorney given as collateral security for a debt is irrevocable by the grantor; but it dies with the grantee. It is not in the sense of the law a power coupled with an interest.
[Cited in U. S. v. Cutts, Case No. 14,912.]
[Cited in Wassell v. Reardon, 11 Ark. 712; Smith v. Tufts, 5 N. H. 458; Davis v. Lane, 10 N. H. 160.]

---

1 [Reported by William P. Mason, Esq.]

5. Where an agreement is made to lend money, and take collateral security on property, and by mistake a power of attorney only is taken, and the party dies, equity will relieve the creditor, and enforce the original agreement against the administrators, where the estate is insolvent.

This is a bill in equity [by Clement S. Hunt against William Ennis and others, administrators of Louis Rousmaniere] set down for a hearing upon demurrer. The bill charges, that the plaintiff, on the 11th of January, 1820, agreed to lend to Louis Rousmaniere, (the respondent's intestate) the sum of $1,450, upon a proposal of the intestate to give the plaintiff as security for re-payment, a bill of sale of the intestate's interest in the brig Marcus, then on a voyage at sea, which sum the plaintiff accordingly lent to the intestate, and took two notes of the intestate, dated the 11th of January, 1820, for the same sum; and for collateral security, the intestate executed on the 13th of the same month a power of attorney, authorizing the plaintiff to make and execute a bill of sale of his three-fourths of the said brig, then on a voyage at sea, to himself or to any other person he should think proper; and in case of the loss of said vessel, or of her freight, to collect for his use all monies to become due on a certain policy of insurance on the said vessel and freight, with a proviso, reciting, that the power was given for collateral security for the payment of the same notes. one of which was payable in 90 days, and the other in four months from date, that if said notes should be duly paid, the power should cease and be surrendered, and the policy be returned, and if otherwise, then the plaintiff was to pay the amount thereof and all expenses out of said property, and to restore the residue to the intestate. The bill farther charges, that on the 21st of March, 1820, the plaintiff agreed to lend to the intestate the farther sum of $700, he agreeing to give as security therefor, his interest in the schooner Industry, then at sea. That the plaintiff accordingly lent the intestate that sum, and took his note therefor, dated on the same day, and payable in 90 days from date, and that the intestate on the 21st of the same month, executed a power of attorney of the same import as to his interest, viz. three-fourths of the schooner Industry, and as to the last note, as the preceding letter of attorney. All of which notes and powers of attorney, are made part of the bill. The bill farther charges, that the intestate died on the 6th of May, 1820, greatly insolvent, all the said notes being unpaid, except the sum of $200, which was paid on one of the first notes in April preceding, it being the only note then due. That the plaintiff immediately on the death of the intestate gave notice of his powers of attorney to the administrators, and claimed and took possession of the intestate's interest in the schooner Industry, which was then arrived in port: and that afterwards on the arrival of the brig

Nereus at Newport he claimed and took possession of the intestate's interest in that vessel. The bill farther charges, that the administrators having refused to pay him the said notes, he advertised the intestate's interest in said vessels for sale, by virtue of the powers aforesaid, for the purpose of paying these notes; that the administrators forbade the sale, and refused to join in any way to enable the plaintiff to avail himself of his security on said vessels. And the prayer of the bill is, that the administrators may be decreed to join in a sale of the said vessels, or to sell them, and pay the said notes out of the proceeds, and for other relief. The administrators demurred to the bill, for want of equity; and upon the argument,

Mr. Searle and B. Hazard, for plaintiffs, contended, that a power coupled with an interest did not expire upon the death of the party granting it; and cited to this point, 1 Johns. Cas. 1, and the authorities there cited: that the court would enforce the execution of imperfect agreements (Sugd. Powers, 481; 2 Ves. Jr. 151; 1 Proff. Wills, 444; 3 Proff. Wills, 91, 322); that an agreement for a mortgage, and an advance of money created a specific lien against creditors (1 Atk. 148; 3 Ves. 582); that a deposit of title deeds, or securities, not negotiable, created a lien in equity ([Manderville v. Welch] 5 Wheat. [18 U. S.] 284; 3 Brown, Ch. 237); that the court would look to the substantial part of the contract, and consider that done, which ought to be done (Newl. Cont. 13, 42; 2 Ves. Jr. 601, 606); that a trust might be raised on an executory agreement for a valuable consideration (1 Johns. Ch. 337; 6 Ves. 662); that a court of equity would establish an imperfect lien or defective guarantee.

Hunter & Randolph, for defendants, e contra.

STORY, Circuit Justice. The first question is, whether the letters of attorney in this case are powers coupled with an interest, or only personal authorities, which expired with the intestate. If the former, they undoubtedly survived, and may be now executed by the plaintiff, for nothing is better settled, than that powers coupled with an interest, are not limited for their execution to the life of the author. I observe, that in the bill these letters are described as irrevocable powers of attorney; and though not so expressed in terms on the face of the papers, they may justly be so considered with reference to the intestate. Lord Kenyon has laid down the doctrine with great correctness. "There is," says he, "a difference in cases of powers; in general they are revocable from their nature; but there are exceptions. Where a power of attorney is part of a security for money, there it is not revocable. Where a power of attorney was made to levy a fine as part of a security. it was held not to be revocable. The princi-

ple is applicable to every case, where a power of attorney is necessary to effectuate any security; such is not revocable." Walsh v. Whitcomb, 2 Esp. 565. But whether it be irrevocable upon its face, or by necessary construction of law, still a power of attorney expires by the death of the party. This is laid down in Littleton (section 66): "If a man maketh a deed of feoffment to another and a letter of attorney to one to deliver seisin by force of the same deed, yet if livery of seisin be not executed in the life of him, which made the deed, this availeth nothing." Lord Coke in his commentary (Co. Litt. 52b; and see Shipman v. Thompson, Willes, 103, 104, note) confirms the same doctrine; for, says he, albeit the warrant of attorney be indefinite, without any limitation of time, yet the law prescribeth the time, as Littleton here saith, "in the life of him that made the deed; but the death not only of the feoffor, but of the feoffee also, is a countermand in law of the letter of attorney, and the deed itself is become of none effect, because in this case nothing doth pass before livery of seisin." There cannot be a doubt, that upon the principles already stated, the power of attorney in the case here put was irrevocable by the party. It was a part of the title or security of the feoffee. The very point was decided in Wynne v. Thomas, Willes, 565, and better authority could not be. In that case, there was a warrant of attorney to suffer a recovery for certain uses; the recovery was suffered; but the tenant, making the warrant, died before the recovery was actually had. The argument was, that the recovery was good notwithstanding this occurrence, because these warrants of attorney were in their nature irrevocable. Lord Chief Justice Willes said, whether the warrant was revocable or not by the party during her life time, it was certainly revoked by her death, for her attorney could not appear for her and in her stead after she was dead.

Nothing can be clearer, than that the instruments now before the court are mere powers of attorney. They do not purport on their face to be assignments of property, or conditional grants. The language is: I (the grantor) "have constituted and appointed, and do hereby constitute and appoint (the plaintiff) my lawful attorney in my name, for the sole use of him (the plaintiff) to make and execute a regular bill of sale," &c. Now in whose name must such a bill of sale be executed? Clearly by the very terms of the instrument in the name of Rousmaniere, for in no other way could his interest be conveyed, for the plaintiff had no title in the property itself. If so plain a point required authority, we have it in Combes' Case, 9 Coke, 76, where it was resolved, that when one has authority as attorney to do an act, he ought to do it in his name who gives the authority and cannot do it in his own name, nor as his proper act, but in the name and as the act of him, who gives the authority. Now,

how was it possible in this case, after the death of Rousmaniere, to make a bill of sale in his name, or as his act? The power of attorney, as such, was gone and extinct by the death of the party, though it was not revocable by him in his life time. But it is said, that this was a power coupled with an interest, because upon the face of the instruments the power is said to be given "as collateral security" for payment of the notes. The power may well be a naked power, and yet be given as collateral security. It is true, in such a case, it may not be effectual, if the party die; but the same thing may happen, if the property passes to a bona fide purchaser without notice before the execution of the power in the life time of the party. If a naked power be given as collateral security, all the title given by it beyond its ordinary reach is, that thereby it becomes irrevocable by the party; but it may nevertheless become extinct by operation of law. Suppose a person becomes insane after the execution of an irrevocable power of attorney, will a conveyance, executed in his name, during his insanity, be a valid act? I do not understand the terms, "a power coupled with an interest," exactly in the same broad sense, as they seem to be understood in the argument at the bar. The case of Bergen v. Bennett, 1 Caines, Cas. 1, cited at the bar, is certainly good law, and it will illustrate the distinction between naked powers and powers coupled with an interest. There the party mortgaged an estate as collateral security, and gave authority to the grantee to sell the estate absolutely. And the court held, that this was a power coupled with an interest, and that the grantee might well sell the estate, notwithstanding the death of the grantor. But if he did sell, in whose name was the deed to be made? Plainly not in the name of the grantor, for he was dead; but in the name of the grantee, as his own act, in virtue of his power, and as having an interest in the estate conveyed. But suppose instead of a mortgage of the estate, there had been a mere power of attorney authorizing the party to sell the land, and apply the proceeds to the payment of the debt, for which such power was given as collateral security, there the power would not be coupled with any estate in the land; but would be a mere naked power to sell, and could not be executed after the death of the grantor of the power. There is a difference between a power coupled with an interest in the property itself, and a mere interest or benefit in the execution of a power. If a man authorize one as his attorney to sell his ship, and apply the proceeds to the payment of a debt due to him, the latter may have an interest, that the power should be executed; but the power is not coupled with any interest in the thing conveyed. It would be otherwise in case of a conditional assignment of the ship to one as collateral security with a power to make an absolute sale. Mr. Jus-

tice Kent lays down the distinction. in very exact, terms in the case of Bergen v. Bennett. He says, "a power simply collateral and without·interest, or a naked power, is, when, to a mere stranger, authority is given to dispose of an interest, in which he had not before, nor hath, by the instrument creating the power, any estate whatsoever. But when power is given to a person who derives, under the instrument creating the power, or otherwise, a present or future interest in the land, it is then a power relating to the land." A power, too, may be a naked power, and yet may be executed, nay, by its very terms must be executed, after the death of the party creating it. A power given by a testator in his will to his executors to sell his estate for payment of debts is a naked power; and it can only be executed after the death of the testator; and such execution will then be good, because the ·act may be done in the name of the executors, and not as the act of the testator. But a devise of the land. itself to the executors to sell for a like purpose is a power coupled with an interest, for they have an interest or title in the land itself. Co. Litt. 113a, Hargrave's note 2. When, therefore, it is said, that a naked power is extinguished by the death of the person creating it, the language is meant to be confined to those cases, in which, as in the case now before the court, the power is to be executed in the name and as the act of the grantor, and not of the grantee. It is not applied to naked powers generally; but only to naked powers of attorney. A power of attorney to deliver livery of seisin after the decease of· the feoffor is for this reason void. 1 Co. Litt. 52b. In my judgment, this was not a power coupled with an interest in the sense of the law. It was a naked power, and, as such, by its own terms could be executed only in the name of Rousmaniere, and therefore became extinct by his death. If the right of the plaintiff stand then wholly upon this foundation, it is radically defective, and there is no ground for relief in equity.

But it is said, and truly said, that a court of equity will relieve, where instruments have been imperfectly drawn, or by mistake or accident the parties have failed in executing their agreements. This is an old head of equity, and if the intention of the parties here was, as is almost irresistibly forced upon us by the circumstances, to give a permanent collateral security on the vessels, and by mistake they have executed instruments, that have failed of that effect, there cannot be a doubt, that it is the duty of the court to relieve the plaintiff, and to compel the administrators to join in a sale of the vessels for the purpose of paying the debts due to the plaintiff. If a lien on these vessels was originally stipulated, or a legal interest, equity will now compel the administrators to put the party in the same situation. as if such lien or interest had been perfected.

Vide Burn v. Burn, 3 Ves. 573. I ought in justice to add, that the administrators in this case, have no wish to obstruct the plaintiff's relief. They wish only to be safe in their conduct; and have given every just facility to the plaintiff's claim. The bill, as to this last point, contains no allegation of mistake, or that the agreement was originally intended to embrace a permanent lien or interest;. or that the powers of attorney were imperfectly drawn, or essential clauses omitted by mistake. Upon the face, therefore, of. this bill, I should be obliged to hold the demurrer good; though as the plaintiff can amend his. bill, if the facts will help him, the best way will be to have the demurrer withdrawn, and. the plaintiff have leave to amend his bill,. and try its efficacy in the shape, which I have intimated.

[See Cases Nos. 6,897 and 6,898.]