1831.

CRAM
v.
MUNRO.

</div>

---

## CRAM vs. MUNRO.

---

Where a tenant covenanted to pay all taxes, charges and assessments, ordinary and extraordinary, which might, during the term of his lease, be charged or assessed upon the demised property or upon him and he paid an assessment on account of a public sewer, for which a prior assessment had been paid by his landlord before the lease but returned to the latter with interest afterwards on account of an erroneous principle in the assessment: *Held*, that the tenant had no remedy in equity upon the rule of accident.

Whether, as he paid the assessment, he can have relief in equity upon the ground of mistake: *Query.*

---

The complainant hired of the defendant, for the term of ten years, four lots of ground fronting on Canal street in the city of New York, at an annual rent of five hundred dollars.

Amongst the covenants contained in the lease, it was provided—" that the complainant should well and truly discharge " and pay all taxes, charges and assessments, ordinary and " extraordinary, which might, during the said term, be charged " or assessed to or upon the said demised premises or to or " upon any part or parcel thereof or to or upon the said Peter " Jay Munro his heirs, executors, administrators or assigns, " for or in respect to the demised premises or any part thereof

<div align="right">

October 11,
1831.

Landlord and
Tenant.
Assessment.

</div>

" or in respect to the rents thereof by force or in virtue of any " law or laws made or thereafter to be made or otherwise " howsoever." It was further provided by the lease, that in case the complainant should neglect or fail to keep the above covenant and other covenants on his part, all the estate and term thereby granted should cease, determine and be wholly void and of no effect at law or in equity.

The complainant's bill stated, that in the year 1819 (long before the granting of the lease to him) an assessment for building a sewer in Canal street had been imposed on the four lots of ground, amounting to one thousand two hundred and twenty-five dollars, which the defendant, his lessor, had paid to the corporation of the city of New York; that when the complainant agreed to take the lease and to pay the rent of five hundred dollars and to perform the other conditions specified, it was upon the footing that the assessment so imposed had been paid by the lessor and that the premises demised were discharged from all assessments and taxes for the building of the sewer, and such he insisted, was the understanding and agreement of the defendant at the time of the contract and execution of the lease and that he fixed the rent in reference to the large amount which he had paid for the building of the sewer and which the complainant agreed to pay in reference to the advantage to the premises by reason of the sewer. It then appeared, that in the month of September 1823, the corporation of the city of New York passed an ordinance directing the amount of the assessment which had been collected for building the sewer to be refunded, on the ground of an erroneous principle having been adopted in the laying of such assessment; and the defendant, accordingly, received back his one thousand two hundred and twenty-five dollars, with interest, from the corporation. Afterwards, a further proceeding was had according to law, whereby a new assessment of four hundred and sixty-nine dollars and twenty-five cents was imposed upon these lots for the building of the sewer, which, having been confirmed on the fifth day of December one thousand eight hundred and twenty-five, the complainant paid; and he alleged he was compelled to pay the same or otherwise

must have suffered a forfeiture of the lease by the non-payment thereof, which would have been attended with great loss to him as he had erected buildings and put up fixtures, at a great expense, for carrying on his business.

The object of the bill was to compel the defendant to bear the amount which the complainant had thus paid, with interest.

A demurrer was put in to the whole bill: on the ground of a want of equity and because the matter was cognizable at law

Mr. *H. Maxwell,* for the complainant.

Mr. *W. N. Dyckman,* for the defendant.

THE VICE-CHANCELLOR. There is no doubt but that the terms of the covenant are sufficiently broad and comprehensive to embrace every assessment which could possibly be imposed upon the premises during the term, whether for any thing previously done or which might subsequently render a tax or assessment necessary; and the complainant can only be relieved from the apparent obligation of his covenant to pay the assessment in question upon the ground of mistake or accident.

It is, in the first place, contended, that an accident has occurred by which the burthen of the assessment has been unexpectedly cast upon the complainant contrary to the intention and understanding of the parties when the agreement for the lease was made. There are many kinds of accident, however, which form no ground for equitable relief. As, for instance, between a landlord and tenant, where the latter covenants to keep the premises in repair, by which he is bound to rebuild in case of a destruction by fire: a court of equity will not relieve him from the legal effect of his covenant, although the destruction was purely accidental. So, likewise, with respect to rent—he is bound to pay it during the whole term under a general covenant for the purpose, although the house may be entirely destroyed by fire or other casualty, even

*1831.*

CRAM
*v.*
MUNRO.

*October* 31.

where he is exempt from the obligation to rebuild by an exception in his lease; and this also is an accident, from the hardship of which equity affords him no relief. Such, at least, are the latest decisions: 3 *Anst.* 687; 18 *Ves.* 115: 6 *Mass, Rep.* 63; 3 *Call.* 309; and see 2 *Hen. & Mumf.* 408.

The cases in which equity usually extends its aid on the ground of accident are, where an instrument on which a right or title is founded, as a bond for example, is lost or has been destroyed or where, by confusion of boundaries of lands, a remedy by distress for rent is defeated or whenever, by accident, a person is prevented from asserting in the courts of ordinary jurisdiction rights founded on principles acknowledged by those courts. In every such case a court of equity will interfere to supply the defect occasioned by the accident and will give the same remedy which a court of law would have given if the accident had not happened: *Mitf.* 3 *ed.* 91; *Cooper,* 126. There is, likewise, another case which comes under the head of accident in which the court has afforded relief—where an apprentice fee has been paid and the master becomes a bankrupt or dies. In such a case the court entertains jurisdiction in respect to the accident and orders a return of part of the premium; but it is said to be only in favor of apprentices that the mere circumstance of a death is looked upon as the species of accident against which the court relieves: 1 *Mad. Ch. Pr.* 39, 40.

From what has been thus adduced in relation to accident, as a ground of equitable interposition, it appears to be confined to cases where a party is prevented from pursuing his ordinary remedy at law or of availing himself of rights founded on acknowledged principles, which, but for the accident, he might have enforced at law or in the particular case of an apprentice, where, by the death or inability of the master to pursue his business, the former is deprived of the advantage which he was to derive from the personal instruction of the latter. It has nothing to do with the case of a covenant or contract whereby a party has bound himself to the performance of certain acts or a particular duty and unforeseen events, within the scope of his covenant, have arisen which impose upon

him an additional burthen or duty. In such a case it appears to me impossible to say that equity can interfere. The reason is, the party should have guarded himself by providing in his contract against contingencies; and, having omitted to do so, he must put up with the loss if a loss occurs. If the court should attempt relief in such cases, it might, with equal propriety, be called upon to interfere in every case of disappointment and hardship resulting from a contract however fair at the time it was made. Such a practice could not be tolerated.

But it is said, if not a case of accident, it is, at least, a case of mistake—the parties both supposing at the time the contract was made that no other assessment for constructing the sewer than the one already paid for by the defendant would ever be imposed; and in express reference to the fact they fixed the rent and made their agreement. I am not at present prepared to determine whether there is not some foundation for equitable relief in this point of view upon the allegations contained in the bill, and I should, perhaps, be doing the complainant injustice to turn him out of court upon his own explanation of the case. I might have less difficulty upon this point, were it not for the statement of his having been compelled to pay the new assessment of four hundred and sixty-nine dollars and twenty-five cents or otherwise to have suffered a forfeiture of the lease by the non-payment thereof. This allegation seems to negative, in some measure, the idea of such a mistake as the court can relieve against, because, if a mistake existed which would have authorized the court to reform the contract, there could be no forfeiture of the lease by the non-payment of the assessment; and, for him to admit his being bound to pay or to forfeit his lease, is an apparent contradiction to his present assertion of an equitable claim upon the defendant.

Nevertheless, taking this allegation in the qualified sense in which it must be received, when read in connection with the previous statement, it does not entirely overthrow the complainant's case.

After a full consideration of this point, I cannot bring my mind to the conclusion that the bill is entirely destitute of equity; and I shall not, therefore, allow the demurrer. But, I appre-

hend the complainant will find it advisable to amend his bill, in order to do away the apparent contradiction upon the face of it, by alleging more distinctly the mistake now set up so as to entitle him to relief on this ground.

I shall, on this account, permit the defendant to withdraw his demurrer and give the complainant leave to amend his bill, if he shall think proper, (since it is not a sworn bill.)   I am warranted in this, by the course adopted in *Hunt* v. *Rousmanier*, when that case for the first time came before the court upon demurrer: 2 *Mason*, 244.

Let an order, therefore, be entered, allowing the defendant leave to withdraw his demurrer, with liberty to the complainant to amend his bill, if he shall think proper, within ten days; but if the bill be not so amended, the demurrer is to be considered as overruled and the defendant to answer in twenty days after the expiration of the time for amending has expired.   The costs are to abide the event of the cause.