SUTLIFF, J.
The demurrer to the petition presents for our consideration the question, whether the acts of the agent, in making the contract of sale of the land and giving possession,, and receiving part of the purchase money as such agent, after the death of the principal and without knowledge of that event by either party, were authoritative acts, and binding upon the estate and representatives of the principal.
■ An agency, when constituted at common law, corresponds to the mandatum or mandate under the civil law; and when performed in either case, is regarded as the act of the principal, under the maxim of qui facit per aliurn facit per se. The act is supposed to be done by command, and in accordance with the will of the principal or employer, and to receive its binding effect for and upon him, the same as if transacted by himself in person.
It is admitted, in this case, that the intestate, Crane, by the letter written to La Eerry, constituted him an agent, with authority to make a contract of sale for the lands in question; to give possession, receive payment, and promise a conveyance of the title on the part of Crane, as his agent for such purposes. In short, it seems conceded in argument as well as by the pleadings, that if Crane had lived until after the acts performed by La Eerry in relation to the sale of the land, as his agent, had been performed, the acts would have been binding upon Crane and his representatives. But it is claimed by his heirs and representatives that, inasmuch as Crane had in fact deceased before the bargain was made and possession given by La Eerry, the authority so conferred by the letter was terminated by the death of the principal, so that in fact La Eerry had ceased to be an agent at the time of the transaction, and his acts were without authority and void.
It is insisted on the part of the plaintiff", that, although the death of the principal is said to be a termination of the authority of the agent, yet the acts being done within the scope of his agency, in good faith by the parties, and *525 in ignorance of the death of the principal, they ought to be held obligatory upon the estate and representatives of the principal.
As a general rule, it is well understood that the authority of the agent, depending upon the power he possesses to represent his principal, must be regarded as terminated upon the termination of his power; and that the death of the principal terminates the power of the agent. The death of the principal is said to be a revocation, by operation of law, of the power of the agent to act as an agent. And it is insisted (and there are some authorities to that effect), that a revocation of the authority of the agent by the death of the principal, necessarily leaves all acts of the agent done thereafter, in no respect binding upon the estate or representatives of the principal.
I apprehend, however, that the weight of authorities upon this subject will be found to go no further than to hold absolutely void acts of the agent, after the death of his principal and without notice, which must necessarily be done in the name of the principal.
One of the oldest and leading authorities referred to in support of the general proposition that all acts of the agent, not coupled with an interest, after the death of the principal, are absolutely void, is Littleton. But upon referring to that authority, it is found to be merely this: “ If a man maketh a deed of feoffment to another, and a letter of attorney to one to deliver to him seizin by force of the same deed; yet if livery of seizin be not executed in the life of him which made the deed, this avajleth nothing, for that the other had nought to have the tenements according to the purport of the said deed before livery of seizin made; and if there be no livery of seizin, then, after the decease of him who. made the deed, the right of these tenements is forthwith in his heire, or in some other.” Coke on Litt. sec. 66.
Sir Edward Coke, in his commentary on this section, *526 remarks: “ Here albeit the warrant of attorney be indefinite without limitation of any time, yet the law prescribeth a time, as Littleton here saith, in the life of him that made the deed; but the death not only of the feoffor, of whom Littleton speaketh, but of the feoffee also, is a countermand in law of the letter of attorney, and the deed itself is become of none effect, because, in this case, nothing doth passe before livery of seizin. For if the feoffor dieth, the land descends to his heire; and if the feoffee dieth, livery cannot be made to his heire, because, then he should take by purchase, where heires were named by way of limitation. And herewith agreeeth Bracton. ‘Item oportet quod donationem sequatur rei traditio, etiam in vita donatoris et donatorii.’ Therefore, a letter of attorney to deliver livery of seizin after the decease of the feoffor, is void.”
The same doctrine has been applied in the case of fines and common recoveries, in which it has uniformly been held, where an appearance has been entered and a judgment suffered under and by virtue of a warrant of attorney after the death of the vouchee, that, upon the death of the vouchee, the warrant of attorney became void, and the judgment thereon of no effect. Wynne v. Wynne, 7 Mod. Rep. 503, and Will. Rep. 563, where the same case is reported. The action was one of common recovery. The recovery was of Easter term, 1740. The writ of entry tested the 2d of April, returnable (quind. pasch.) the 20th April, fixing the appearance day the 23d, on which day the record showed that the defendant, William Thomas, the tenant, appeared and vouched J. Apperley and Alathea, his wife, whereupon a writ of summons and warrantirandum was, awarded, returnable on the morrow of Ascension (May 16th), of that year. The dedimus to take the warrant of attorney was tested the 25th April. The warrant of attorney was executed by J. Apperley and wife, on the 30th, and the mittimus by which it was sent out of chancery into that court (the common pleas), was tested the 8th of May. Alathea died on the 10th. of May. *527 It was held that the warrant of attorney by Alathea, so executed, was revoked by her death, and did not authorize the attorney to enter an appearance on the 16th, (after her death), nor authorize a judgment of recovery.
It will readily occur to any one, that in relation to the conveyance of the title of land, either by the execution of a deed of conveyance, or by suffering a common recovery, the power of the agent must necessarily terminate on the death of the principal. Even a deed signed and sealed by one, with the intent and wish to deliver the same, would, from the necessity of the case, be inoperative to convey a title by delivery after the death of the maker of the deed. The title of the land passing, upon his death, instanter, to the heir or devisee of the deceased, no action of the attorney, even if his powers continued, could affect the title. His action would have the same relation to the title as it would, the principal living, and having before conveyed the title to a stranger, if the attorney, in ignorance of the fact, by virtue of his power of attorney, should after-wards execute a deed of conveyance of the same land to another.
But there is no necessity of this kind for holding the authority of the agent to make contracts within his agency terminate instanter upon the death of the principal.
The termination of the authority of the agent by virtue of his agency, upon the death of the principal, seems rather to rest upon the general rule of law, that the derivative authority expires with the original authority from which derived.
It is said, as a reason for the termination of the power of the agent upon the expiration of the power of the principal, that it is impossible that the power of the agent, who is only to act for or in the stead of the principal, as his representative, can in fact be greater or continue longer than the power of the principal. But the power of the principal may be terminated by bankruptcy or lunacy, and in the ease of a feme sole, by coverture. In each of those *528 cases, a revocation of the agency by operation of law, by change of condition or state of the principal, producing in him an incapacity to act legally, obtains under the general rule, as well as in case of revocation by the death of the principal. The general rule that such change of state, terminating the power of the principal to act, is a revocation of the agency hy operation of law, obtains in each of the cases named. And the question arises in each, whether there is in fact any exception to the application of the general rule. Is coverture, bankruptcy, lunacy, or death, terminating, as they respectively do, the power of the principal, to be regarded as so terminating the authority of the agent, that his acts are necessarily to be regarded in all cases as void, and of no binding effect upon the representatives or estate of the principal ?
The general rule that a mere power or authoiity expires hy the death of either the principal or agent is recognized in the civil law, as well as at common law. Yet under the civil law it has always been held that the acts of an agent done in good faith in discharge of the duties of the agency, after the death of the principal, and in ignorance of the event on the part of those concerned in the transaction, were valid and binding upon the representatives of the principal. 1 Horn., B. 1, tit. 15, sec. 4, art. 7-8.
Pothier, in treating upon this subject, says: “ The mandate is extinguished by the natural or civil death of the principal (or mandant) when it happens before the agent (or mandatary) has executed it. Eor example, if I have authorized you to purchase a certain thing for me, the power which I have given you, ceases with my death, and my heirs are not obliged to take, on their own account, the purchase made by you after my death.” “ But,” he adds, “ although the mandate is thus extinguished by the death of the principal; nevertheless, if the agent, being ignorant of the death of the principal, has in good faith transacted the business with which he was charged, the heirs and *529 other representatives of the principal are bound to indemnify him, and to ratify what he has done.”
But while it is conceded that in Scotland, and in all other countries where the principles of the civil law obtain, this rule is recognized, that the acts of an agent, done bona fide, after the death of the principal, but without notice of his death, are valid and binding, it insisted that the same rule does not find favor at common law.
Chancellor Kent, in his Commentaries, vol. 2, page 646, in treating upon this subject, uses the following language: “ By the civil law, and the law of those countries which-have adopted the civil law, the acts of an agent done: bona fide after the death of the principal, and before-notice’ of his death, are valid and binding on his representatives. But this equitable principle does not prevail in the English-law; and the death of the principal is an instantaneous' and absolute revocation of the authority of the agent un-. less the power be coupled with an interest.”
The great learning and deservedly high reputation of the author, has, doubtless, tended to give more confidence to the doctrine thus unqualifiedly expressed, than the authorities to which he refers for its support would seem to warrant. The first authority referred to by Mr. Kent is the case of The King v. Corporation of Bedford Level, 6 East’s Rep. 356. It will be perceived, however, upon ref-, erence to the authority, that the question was only inci-dentally presented in that case. The question arose as to the validity of the act of a deputy registrar after the death of the principal registrar. The solicitor general Wilson, and Abbott, in their argument upon this point, used the following language: “ He is a mere ministerial officer, having no discretion to exercise; this is most like the case-of a steward of a manor who may take sui’renders and do other ministerial acts, though not legally invested with the office; because, as it is said in Knowles v. Luce, Moor 112, those for whom such acts are done know not the extent-' of his title. And there Manwood, C. B., who delivered- *530 the judgment of the court, compares it to the case of an under steward when the head steward is dead, whom he considers to have a color of authority; so that if he assemble the tenants and they do their service at the court, the acts which he does are good. And he distinguishes that from.' the case of an officer who acts without either color or right.” Lord Ellenborough, in delivering his opinion in the case, held that the appointment of the deputy registrar must be regarded as made by the principal registrar Cole, and added: “ If, then, he were to be considered as the deputy of Cole, his authority would necessarily expire On the death of his principal. I feel myself pressed, however, with the authority of the doctrine in the case of Moor, that the acts of an under steward may be good after the death of his principal; and it is a very important point to be considered how far that may be cai’ried.” Lawrence, L, and LeBlanc, J., respectively expressed similar opinions upon the same question.
Lord Ellenborough, C. J., on the next day delivered the opinion of the whole court. In the opinion he uses the following language: “The case pressed upon us from Moor 112, on being considered, is not, we think, an authority against this opinion, where Manwood, C. B., says, ‘ there is a diversity between copyhold grants by a steward who has a color and no right to hold a court, and one who has neither color or right; for if one who has color assemble the tenants, and they do their service, the acts are good which he does, as the under steward when the head steward is dead.’ . ‘But this must be understood of acts of the under steward after the death of his principal, and before his death is known; for if that were known to the tenants, what color could he have to act?’”
The case of Shipman v. Thompson, Will. Rep. 103, n., is- referred to by Mr. Kent as another authority in point. That case was as follows: An action of assumpsit was brought by an executor, in his own name, against an attorney constituted by the testator to collect money for *531 Mm of Ms tenants, to recover money which, the attorney had collected from the tenants, as such attorney, after the death of the testator, the principal. The main question seems to have been, whether the action for money had and received could be maintained against the attorney in the name of the executor. The following is the language of that part of the opinion of Mr. B. Eortescue, before whom the cause was tried, which seems in point: “It is quite a new debt, created by the defendant to the executor since the death of the testator, and a new cause of action which was not subsisting before. The defendant was never indebted to the testator for this money, and the original debtors, the tenants, are discharged.”
The case of Watson, etc., v. King, 4 Campb. N. P. Rep. 272, another case referred to by the commentator, presented the question incidentally as follows: Maxwell, the intestate, being the owner of three-fourths part of the ship Little William, in April, 1813, gave a power of attorney to one Ward, to whom he was largely indebted, authorizing him to sell them. He then sailed in the ship Effort for Bermuda. In February, 1814, he was with this ship at Jamaica, and sailed in her for England with a large fleet, under convoy of H. M. ship Valiant. A hurricane soon after arose, in which several of the fleet foundered. The Effort parted company on the 7th of March, and was never more heard of. On the 8th of June following, Ward, under the power of attorney, sold Maxwell’s interest in the Little William to the defendant, and indorsed the register in Maxwell’s name. The suit brought by Watson and his wife, described in the declaration as administratrix of Maxwell, was an action of trover, to recover of Xing the three-fourths of the ship held by him under said purchase. Among other objections to a recovery, it was urged that the power of attorney, being coupled with an interest, was not revoked by the death of the intestate. Lord Ellenborough delivered the opinion of the court, and is reported to have decided this point as follows: *532 “ A power coupled with an interest cannot be revoked by the person granting it; but it is necessarily revoked by his death. How can a valid act be done in the name of a dead man ?” The opinion was delivered by Lord Ellen-borough in 1815, ten years after the opinion he delivered in the case of The King v. The Corporation of Bedford Level, in 6 East above referred to; and without any qualification. of his former opinion. The question as to whether the title of Maxwell had been transferred by his name, after his death, being indorsed upon the register, is obviously quite a different one from the one under consideration here.
The case of Bergen & Bergen v. Bennett, also cited by Mr. Kent (1 Caines’ Cases 1), was simply this: On the 12th April, 1776, Bennett executed to Yanderbilt a bond for £600, payable in one year, and for further security gave a mortgage on sixty-seven acres of land. Shortly after this, on the 8th of November, 1776, the mortgagor died intestate, leaving the respondent, Wilhelmus Bennett, fifteen years of age, his eldest son and heir at law. The usual power to sell was contained in the mortgage, which, together with the power, was, on the 10th of April, 1777, registered in the office of the county clerk, in the book for registering mortgages. In the registry the mortgage was, as usual, abbreviated; but the power was, though not recorded as deeds usually are, set forth in the registry of the mortgage in hcec verba, excepting as to the latter part declaring the sale to be a perpetual bar, etc., which was totally omitted. On the 13th of April, 1781, Teunis Bergen, the appellant, purchased the bond and mortgage for £700. In 1783, the respondent, the heir of the mortgagor, left the state and went to Nova Scotia. On the 11th of March, 1804, notice of sale of the premises, at public vendue, was published by Teunis Bergen. Upon the day fixed by the notice, the premises were offered and sold at public vendue to Michael Bergen, the other appellant, for £700. The sale appeared to have been fairly made. In 1788 the respondent came back to that state, and on the 3d of February, *533 1800, filed Ms bill to redeem tbe premises, for tbe reason, among others, “ because tbe power to sell contained in tbe mortgage expired witb tbe life of tbe donor.” Tbe opinion was delivered by Kent, J., reversing tbe decree of tbe court of chancery, permitting tbe heir to redeem; and upon tbe point raised be used the following language: “ I conclude, therefore, that tbe power to sell was not revoked by tbe death of tbe mortgagor, and that tbe decree can not be supported on tbe ground that was taken in tbe court below.”
Tbe case of Harper v. Little, 2 Greenl. 14, also referred to by tbe commentator, only decides tbe familiar principle of law that a deed, made after tbe death of tbe principal, in bis name, under a power of attorney executed by him when living, is inoperative to convey the title of lands. Another case referred to by Mr. Kent is that of Hunt v. Administrator of Rousmanier, 2 Mason’s Rep. 244. Hunt filed bis petition in equity charging that Rousmanier, in bis lifetime, borrowed of him, Hunt, $1,450, January 11, 1820, and gave a bill of sale of bis interest in tbe brig Marcus, then at sea, for collateral security for tbe payment of tbe loan; and on tbe 13th day of tbe same month executed a power of attorney authorizing tbe plaintiff to execute a bill of sale of bis interest, three-fourths of tbe brig, to himself or any other person be should think proper, etc., reciting in a proviso that the same was given for collateral security for tbe payment of tbe note of $1,450, payable in ninety days, etc.; and that tbe intestate, on tbe 6th of May, 1820, died; that tbe defendants, administrators of tbe intestate, bad refused to pay, and be bad therefore advertised tbe three-fourths of tbe brig for sale, by virtue of tbe power aforesaid, for the payment of said demand, but that tbe administrators forbade tbe sale, and refused to suffer tbe plaintiff to avail himself of bis said security, etc. Hpon bearing tbe case on demurrer tbe following points were held by tbe court: 1. That a power coupled witb an interest does not expire on tbe death of tbe person *534 creating it; 2. A naked power does not necessarily expire with, the death of the person creating it. And upon this point the following language is used by Judge Story in giving the opinion: “"When, therefore, it is said that a naked power is extinguished by the death of the person creating it, the language is meant to be confined to those cases in which, as in the case now before the court, the power is. to be executed in the name and as the act of the grantor, and not of the grantee.” The same case after-wards came before the supreme court, (8 Wheat. 201,) and was in that court decided upon the same ground. Chief Justice Marshall, in pronouncing the opinion, resolves the case under the general rule that the death of the principal was a revocation of the letter of attorney; and as the sale was to be made in the name of the principal, and after his death was known, no power to sell was held by the holder of the letter of attorney.
I have thus particularly referred to each of the authorities given by Mr. Kent in support of the doctrine expressed by him upon this subject.
Mr. Justice Story, in treating of the subject, is. much more guarded and less positive as to the doctrine of the common law differing from the civil law.
After mentioning the rule prevailing in Scotland, and recognized in all countries where the civil law prevails, that if the agent, being ignorant of the death of his principal, has, in good faith, transacted the business with which intrusted, his acts are to be held valid, he adds: “ Reasonable as these doctrines seem, and convenient as they must be admitted to be, for the practical- purposes of trade and commerce, it has been thought that they do not prevail in the common law as recognized either in England or in America.” And here reference is made by Mr. Story to the opinion of Mr. Kent already referred to. “But” (continues Mr. Story) “it may be doubted whether our law deserves such a reproach, at least to the full extent in *535 which it is usually imputed to it. Regularly, indeed, where the act to he done must he done in the name of the principal, and not in that of the agent, the authority is extinguished by the death of the principal, because it has then become incapable of being so executed.” Story on Agency, sec. 495. Mr. Story did not insist upon any exception or limitation of the rule in relation to the revocation of the authority of the agent by the death of the principal, inconsistent with the doctrine expressed by Littleton & Coke, already referred to. In secs. 147, 148, and 150, of his work upon Agency, Mr. Story concedes that the death of the principal necessarily extinguishes the power of an agent to make a conveyance under seal in the name of his principal, or to execute a bond or any sealed instrument, in the name of the principal, after his death, that can be obligatory upon his representatives. He, however, uses the following language in sec. 152: “But when an act is to be done in pais, or in any other manner than by a written instrument under seal, then the act will be so construed, if it may be, as most effectually to accomplish the end required by the principal.” And the same doctrine is, with equal clearness, expressed in the opinion of the court in the case of Hunt v. Rousmanier, 2 Mason 244.
The distinction thus made between acts of an agent by deed, and necessarily to be done in the name of the principal, and acts done in pais, and not necessarily to be done in his name, let us suppose the principal to have appointed two agents to transact business for him at a remote distance. One is employed and empowered to sell, survey, and give possession of his land, and to receive payment and receipt therefor. The other agent is authorized to execute deeds of conveyance of the lands respectively to purchasers, upon presentation of receipts of payment, respectively, from the other agent, upon their contracts of sale. The limitation or exception to the rule recognized by Mr. Story would hold the acts of the agent, in selling, giving possession, and receiving and receipting the purchase price of the lands, to be valid, *536 ■even,if done after the death of the principal, if done in good faith and in ignorance of the event. The limitation : of the rale would hold those acts valid and binding upon .the representatives and estate of the principal as acts in pais; -while it would still regard the acts of the other agent, ■dn executing and delivering deeds in the name of the principal,-as void ex necissitate, and utterly inoperative to convey 'title after the death of the principal. And the fact of the -title of land, by an arbitrary rule of law, passing instanter .Upon the death of the owner, by descent or devise, shows ;the necessity of the termination of the powers of the .-attorney and agent for the execution of the deeds, upon the .death of the principal.
. At the times that Mr. Kent and Mr. Story respectively expressed their views upon this subject, the revocation of the authority of the agent by death, I am not aware of the existence of a single well-considered adjudicated case upon the. point, either in this country or England.
It seems to have been upon the analogies of the law, as these eminent jurists respectively viewed them, that each •formed his opinion.
■ • I admit that since the time that Mr. Kent expressed his .opinion, there have been cases adjudicated both in this -country and in England far more in accordance with the doctrine he asserted than the cases he referred to; and which certainly seem to rather support Mr. Story’s views than his own. In the case of Rigs, Aertson & Son v. Cage, Adm’r, 2 Humph. 350, decided in 1840, the supreme court of Tennessee refer to and fully recognize the doctrine of ■Mr. Kent as expressed in his Commentaries, vol. 2, p. 645. But it does not appear from the report of the case that the correctness of the doctrine as laid down by Mr. Kent, ■was questioned by either counsel or court. Judge Green, who delivered the opinion in that case, perhaps may be said to have recognized the same view of the law, incidentally, at the preceding term of that court, in the case of Jenkins v. Atkins, 1 Humph. 294. In the case of Gale v. *537 Tappan, 12 N. H. Rep. 146, in which, it was held that á demand made by an attorney, appointed by the payee in .his lifetime, after his death, was without authority, the court say generally, “ that an authority of this kind is determined by the death of the principal.” But in that case it does not appear that the demand was made in ignorance of the death of the principal, or that it was not a case properly to be resolved under the general rule. The doctrine, as laid down by Mr. Kent, seems to have been fully recognized by the king’s bench in the case of Blades v. Free, Executor of Clark, 9 Barn. & Cress. 167. But the limitation or exception to the general rule, here under consideration, does not appear from the report to have been argued by counsel, or particularly considered by the court, but seems to have been passed, sub silentio, as it was by the supreme court of Tennessee.
I know of no other adjudicated case directly in point denying the limitation or exception to the rule existing at common law, as well as under the civil law. Nor are there perhaps a greater number of adjudicated eases to be found dii-ectly in point to maintain the converse of the proposition. But in this dearth of authorities, I think the weight of authority, English and American, is in favor of the existence of the limitation or exception to the rule at common law, as well as under the civil law. And the argument arising from the analogies of the law, I regard as Very decidedly in favor of the exception and limitation of the rule being recognized.
The authority of the agent, arising as it does from the relation of the agent to his principal, would seem logically to depend necessarily upon the continuance of that relation. But such in law is not the fact. It is admitted that one having been an agent, may, after he has ceased to be such, still have power to bind his principal by his acts. The only real question in dispute between those affirming and denying the limitation or exception under considera *538 tion, is, as to the extent of the power of one having ceased to be an agent in fact, to execute the office of agent.
Let us briefly advert to the authorities upon this point, which are undisputed:
Harrison’s ease, as called, 12 Mod. Rep. 346, is reported thus: “ A servant had power to draw bills of exchange in his master’s name, and afterward is turned out of service.” “ Holt, Chief Justice: If he draw a bill in so little time after, that the world cannot take notice of his being out of service, or if he were a long time out of service, but that kept so secret that the world cannot take notice of it, the bill in those cases shall bind the master.”
Howard v. Treadwell, 1 Strange 506, a leading case, was as follows: The defendant, who was a considerable dealer in iron, and known to the plaintiff as such, though they had never dealt together before, sent a waterman to the plaintiff for iron on trust, and paid for it afterwards. He sent the same waterman a second time with ready money, who received the goods, but did not pay for them; and the Chief Justice ruled the sending him upon trust the first time and paying for the goods, was giving him credit so as to charge the defendant upon the second contract.
In treating of when a revocation of the power of the agent by his principal takes effect, Mr. Story says: “ As to the agent himself, subject to what has already been stated, it takes effect from the time when the revocation is made known to him; and as to third persons, when it is made known to them, and not before. Until, thei'efore, the revocation is so made known, it is inoperative. If known to the agent, as against his principal, his rights are gone; but as to third persons, who are ignorant of the revocation, his acts bind both himself and principal, Thus, where an agency, constituted by' writing, wasrevoked, but the written authority was left in the hands of the agent, and he subsequently exhibited it to a third pei*son who dealt with him as agent on the faith of it, without any notice of the revocation, the act of the agent, *539 within the scope of the authority, was held to hind the principal. Hence it is, that if a clerk or agent is employed to sign, indorse, or accept bills and notes for his principal, and he is discharged, if the discharge is not known by persons dealing with him, notes and bills subsequently signed, indorsed or accepted by the clerk or agent, will be binding on the principal. Indeed, this is but another application of the known maxim of law and equity, that where one of two innocent persons must suffer, he shall suffer who, by his confidence or silence, or conduct, has misled the other.” Story on Agency, sec.,470.
In the extract given, Mr. Story fully approves the doctrine held in the ease of Anon. v. Harrison, 12 Mod. Rep., and also that of Burd v. Kirk, 11 N. H. Rep. 397, in which it was held, where an agency, constituted by writing, is revoked, but the written authority is left in the hands of the agent, and he exhibits it to a third person, who, on the faith of it, and without notice of the revocation, deals with him as an agent, within the scope of its authority, the principal is bound thereby. Indeed, I apprehend, upon this point there is no difference between the views entertained by Mr. Kent and Mr. Story. In his Commentaries, vol. 2, p. 645, Mr. Kent, after affirming the rule of the common law and the civil law to be the same, uses the following language upon the subject of the revocation of the power of the agent by the principal: “ Even if the notice had reached the agent, and he concealed the knowledge of the revocation from the public, and the circumstances attending the revocation were such that the1 public had no just ground to presume a revocation, his acts, done under his former power, would still be binding upon his principal.”
It thus appears evident from the authorities, that the actual revocation of the powers of the agent by the principal, does not, in all cases, terminate his authority. In precisely such a case as the one under consideration, if the *540 'revocation of the powers of the agent had been actually made by the principal in his lifetime, and he had proceeded to make sale as he did by virtue of the letter which he still held and exhibited, all would agree in pronouncing the acts of the agent binding, and tbe sale valid.
But by what reasoning from analogies, or otherwise, can it be shown to be material in the case, whether tbe revocation of tbe powers of tbe agent be actually made by the principal, or whether tbe revocation be by operation of law merely ?
In tbe fonner case tbe revocation is intentional, and actually made b}7 tbe principal; in tbe latter it is only accidental, and to be inferred from a given state of facts, and without tbe expressed will, and perhaps even against tbe will, of tbe principal. There is, then, no apparent reason why a revocation of an agency, by operation of law, by coverture, bankruptcy, lunacy, or death, should at all exclude tbe limitation or exception to tbe rule in such a case as tbe present. Tbe substantive fact, that tbe agent has ceased to have authority to represent his principal, obtains equally in either case. And yet, paradoxical as it may seem, it is evident, from tbe authorities, that the agent may, under certain circumstances, continue to represent and bind the interests of bis former principal, after tbe actual revocation of bis authority.
Now upon what principle does tbe obligation, imposed by tbe acts of tbe agent after bis authority has terminated, really rest ? It seems to me tbe true 'answer is, public policy. Tbe great and practical purposes and interests of trade and commerce, and tbe imperious necessity of confidence in tbe social and commercial relations of men, require that an agency, when constituted, should continue to be duly accredited. To secure this confidence, and consequent facility and aid to tbe purposes and interests of commerce, it is admitted that an agency, in cases of actual revocation, is still to be regarded as continuing, in such cases as tbe present, toward third persons, until actual or *541 implied notice of the revocation. And I admit, that I can perceive no reason why the rule should be held differently in cases of revocation by mere operation of law.
It seems to me that, in all such cases, the party who has, by his own conduct, purposely invited confidence and credit to be reposed in another as his agent, and has thereby induced another to deal with him in good faith, as such agent, neither such party nor his representatives ought to be permitted, in law, to gainsay the commission of credit and confidence so given to him by the principal. And I think the authorities go to that extent. (See Pickard v. &'ears, 6 Ad. & Ell. 475.) The extensive relations of commerce are often remote as well as intimate. The application of this doctrine must include factors, foreign as well as domestic, commission merchants, consignees and supercargoes, and other agents remote from their principal ; and who are required, for long periods of time not unfrequently, by their principal to transact business of immense importance, without a possibility of knowing perhaps even the probable continuance of the life of the principal. It must not unfrequently happen that valuable cargoes are sold and purchased in foreign countries by the agent, in obedience to his instructions from his principal, after and without knowledge of his death. And so, too, cases are constantly occurring of money being collected and paid by agents, under instructions of the principal, after and without knowledge of his death. In all these cases, there is certainly every reason for holding valid and binding the acts so done by the agency which the principal had, in his life, constituted and ordered, that there would be to hold valid the acts of one who had ceased to be his agent, by revocation of his power, but without notice to the one trusting him as agent.
But I have said, that I think the weight of authorities are in favor of the limitation, or exception, to the rule in *542 sisted upon; and I will here briefly state the authorities relied upon in support of the proposition.
It may be observed, in the first place, that the doctrine, as expressed and illustrated by Littleton and by Coke, is not inconsistent with the limitation of the rule. In the case of Shipman v. Thompson, Will. Rep. 105, Mr. B. Eortescue, in giving judgment, speaking of money collected of tenants of the principal after his death, by an attorney appointed by him in his lifetime, remarked as follows: “ The original debtors, the tenants, are discharged; ” intimating thereby that he regarded the payment by the tenants to the attorney of the principal, after his death, as payment to the representative of the principal. In the case of Knowles v. Luce, Moor 112, Justice Manwood held that, where the under steward, not knowing the death of the head steward, had assembled the tenants and they rendered service under him, although he had no authority fact after the death of the head steward, his death not being known, it was such color of authority, on the part of the under steward, as to make obligatory his acts of receiving the service.
And the same doctrine is clearly recognized by Lord Ellenborough, in the case of The King v. Bedford Level, 6 East 356. In the case of McDonald v. McDonald, Buck 399, cited to Justice Bailey in the trial of the case of Blades v. Free, 9 Barn. & Cress. 167, it was said, and not disputed, that the vice chancellor referred to a case tried by Lord Mansfield, in which he held, that acts done under a power of attorney in India after the death of the principal, but in ignorance of the fact, were to be held binding upon his representatives. In Russel on Crimes 317, it is said: “ Again, the death of the principal will operate as a revocation of the authority,” etc. “ But where the factor or broker has authority to do an act in his own name, then it would seem that the death of the principal will not, ipso facto, determine such authority.” In Chitty on Com. and Manuf. 233, the law is said to be, that the acts of a legal agent *543 may be good, done after the death of his principal, before notice thereof to those who are interested in his acts, as being done under a color of authority which strangers could not examine. In Chitty on Contr. 19, is the following language: “ And it is said that a sale or purchase by an agent, even after the death of his principal, if made without notice of the fact, will bind the representatives of the latter.” In the case of Davis v. Lane, 10 N. H. Rep. 156, it was held that the authority of the agent, when revocable by the principal, was suspended or revoked by his lunacy, in consequence of an entire loss of mental power. But held also, that if the principal, by letter or otherwise, had enabled the agent to hold himself out as having authority, and the incapacity of the principal is not known to those dealing with the agent, within the scope of his apparent authority, the principal and those claiming under him, are precluded from setting up the insanity as a revocation.
At the September term of the supreme court of Pennsylvania, in 1842, the question under consideration first came before that court, in the case of Cassiday v. M’Kinzie, 4 Watts & Serg. 282. To sustain the plea of payment of a certain judgment against Peter Cassiday, entered April 4, 1837, in favor of Eli M’Kinzie, the executors of Cassiday offered in evidence the following order:
“ Mr. Peter Casidy please pay to the bearer Robert Burgoon whatever sum of money the court should make to me as I am not able to come up to court to git it myself and I dont wish you to pay it to John M’Kinsey and the receipt of Robert Burgoon shall be good to you for the same.
“ ELY M’KINZEE.
“ N. B. Pay the money to no person but Robert Burgoon.”
The defendant below then called Robert Burgoon as a witness, to prove a number of receipts given by him for money upon the order, and the payment of the money as thereby expressed. The receipts were respectively dated, Sept. 29, 1838; Jan. 11, 1839; April 15, 1839; June 12, 1839; Nov. 8, 1839; and Nov. 15, 1839. The receipts *544 were admitted to be genuine, but objected to on the ground that the payments to Burgoon were not binding on the plaintiff* who was appointed administrator of M’Kenzie June 21, 1839. The defendant also offered to prove, that the intestate went to the western country soon after giving the order to Burgoon; and that the money was paid to Burgoon without any knowledge of the death of M’Kenzie. The court excluded the evidence and sealed a bill of exceptions.
The plaintiff in error, before the supreme court, insisted that the money paid to Burgoon by Cassiday, before knowledge of the death of M’Kenzie, was a valid payment. It was urged by the defendant in error, that the death of the principal, M’Kenzie, was a revocation of the power of the agent, Burgoon, and therefore the payments to Bur-goon were void.
The supreme court was unanimous in the opinion, that the acts of the agent, done after the death of the principal and without knowledge of his death, were binding upon the parties. Rogers, J., in delivering the opinion of the court, uses the following language: “This money has been paid by the debtor in good faith, and received by the agent in good faith; and why should it not be good when the authority is revoked by death, as it confessedly is when expressly revoked by the principal in his lifetime Can it be that a payment made to an agent from a foreign country, and from one of our cities to the western states, employed for the special purpose of collecting debts, is void because his principal may have died the very day before the actual receipt of the money ? .... It would be unjust to the agent, and unjust to the debtor.”
In the case of Dick, Ex’r of Doughty, v. Page & Bacon, 17 Missouri Rep. 234, the same question came before the supreme court of Missouri, at its October term, 1852. The holding of that court was the same as in Pennsylvania. The court were unanimous in the opinion that the rule, that the act of an agent done after the death of the prin *545 cipal without notice is void, only applies to those acts which must be done in the name of the principal, and not to those acts which the agent may do in his own name.
But the case under consideration is not one in which the acts of the agent could only be executed in the name of the principal. The agent La Eerry was not an agent to convey the title to the land; but only to negotiate a bargain with some one in relation to the conveyance. The instructions given by the principal to sell were as follows: “I would be very glad, James, if you would sell my land. I am anxious to sell; do try to sell if you can, and I will satisfy you for it. I want you to do the best you can for me, for I am poor and needy.” Under the authority thus given, La Eerry might have made a verbal contract, upon exhibiting the letter, and have given possession and received part payment.
There is no more necessity for the contract of sale, in this case, to have been made in the name of the principal than there would have been for the agent to have made a contract for the sale of a horse, or any other article of personal property, in the name of the principal. The act of delivering the horse, in the one case, and giving possession of the land in the other, and receiving all or part of the purchase money, and promising a good title on full payment, would, in either case, be a valid execution of such agency. Thus in the case of Bowen v. Morris, 2 Taunt. 374, 387, where, on a sale of real property by the corporation of Caermarthen, at public auction, May 14, 1804, David Bowen had become the purchaser, and the same was witnessed by a memorandum in writing of the tenor following: “The above mentioned premises comprised in lot 35, were this day sold to David Bowen (the defendant below) for ¿£1,000, subject to the conditions of the sale within mentioned, and David Bowen, the purchaser or highest bidder of the said lot, and Thomas Morris, Esq., the mayor of the said corporation, on behalf of himself and the rest of the burgesses and *546 commonalty of the borough of Caermarthen, the vendors of the premises, do hereby mutually agree to perform and fulfill, on each of their parts respectively, the within conditions of sale. Signed, T. Morris, Mayor. David Bowen.”
And which contract of the mayor afterwards, on the 22d of June, 1804, was approved by resolution, and order duly made and entered at a corporate meeting of the borough, held in pursuance of their charter. After being twice argued at great length it was unanimously held by the court, Mansfield, C. J., giving the opinion, that the contract was “ on behalf of the corporation.” The mayor, says the court, “ did not contract on behalf of himself personally, but on behalf of the corporation; that he acted merely as an agent.”
The letter to La Ferry, it is to be remarked, was not a power of attorney, or intended to authorize him to convey the lands, only to make a contract of sale, a bargain. So when A., an agent duly authorized, wrote on a note, “by authority from B., I hereby guaranty the payment of this note,” and signed in his own name, A., it was held to be the guaranty of the principal, and not of the agent. N. E. Mar. Ins. Co. v. DeWolf, 8 Pick. 56.
Although the rule is somewhat strict in relation to the mode of executing sealed instruments by an agent, where, from the objects of the instrument, it is essential they should be in the name and under the seal of the principal in order to give legal operation to the same; yet the rule is less strict, and, indeed, receives a liberal exposition in all contracts not under seal made by the agent. “ In such cases,” says Mr. Story, “ in furtherance of public policy of encouraging trade, if it can, upon the whole instrument, be collected that the true object and intent of it are to bind the principal, and not the agent, courts of justice will adopt that construction of it, however informally it may be expressed.” The same doctrine is laid down by the supreme court of the United States in the case of Mechanics’ Bank *547 of Alexandria v. Bank of Columbia, 5 Wheat. Rep. 326; also by the supreme court of New York, in the cases of Pentz v. Stanton, 10 Wend. 271, and Townsend v. Hubbard, 4 Hill’s Rep. 351.
The contract under consideration would fall under this liberal exposition, and would have been obligatory upon the principal, if he had survived, even though his name were not subscribed to the contract. It would have been sufficient that it appeared on the face of the contract that it was made for him by the agent.
If, then, any contract, made by an agent after the death of his principal, without knowledge of the event, in law can, and in equity ought, to be held binding, this is such a contract.
I believe the weight of authority is in favor' of the rule being the same at common law as in the civil law, in regard to acts thus done after the death of the principal. But if doubtful, or even if the weight of authorities were against the exception existing at common law, in favor of the binding character of the acts of the agent, the reason in favor of the exception is unanswerable.
A majority of the court think the judgment of the court of common pleas should be reversed.

Judgment accordingly.

Brinkerhoee and Scott, JJ., concurred.
Swan, C. J., and Peck, J., dissented.